**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGEL DIDIER DEAGUEROS MOTA,<br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Attorney General of the United States, in his official capacity, et al.,<br>Respondents. | Case No.: 3:26-cv-02830-RBM-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 14]** |

Petitioner Angel Didier Deagueros Mota ("Petitioner') has filed a Second Amended Petition for Writ of Habeas Corpus ("Second Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 14.) For the reasons below, the Second Amended Petition is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Procedural History

On February 26, 2026, Petitioner filed his petition in *Deagueros Mota v. Bondi*, Case No.: 3:26-cv-01254-RBM-MSB. On April 10, 2026, the Court denied that petition without prejudice, finding that although Petitioner's 90-day mandatory removal period under 8 U.S.C. § 1231 had passed, Respondents had sufficiently rebutted Petitioner's argument that there was no significant likelihood of his removal in the reasonably foreseeable future.

On May 4, 2026, Petitioner filed his first petition in the instant action. (Doc. 1.) The Court again denied that petition without prejudice, finding that Petitioner "foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should be* removed, and there is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that would prevent [Petitioner's] removal to Mexico if he is ultimately unsuccessful in his petition for review with the Ninth Circuit." (Doc. 8 at 5 (citation modified).)

On July 24, 2026, Petitioner filed an amended petition (Doc. 10), which the Court denied for essentially the same reasons (Doc. 13). Petitioner then, attempting to proceed *pro se* despite being represented by counsel, filed a new petition in *Deagueros-Mota v. Warden*, No. 3:26-cv-04892-RBM-MSB, ECF No. 1 (S.D. Cal. Aug. 27, 2026). The Court dismissed that case as duplicative and reminded Petitioner that his counsel must file any amendment in the instant action. *Id.*, ECF No. 5. Petitioner now brings his Second Amended Petition, arguing that: (1) his detention violates the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his detention violates the Fifth Amendment's Due Process Clause because it has been unreasonably prolonged as applied to him; and (3) Respondents have not complied with the procedural requirements of 8 C.F.R. § 241.4. (Doc. 14 ¶¶ 41–60.) On November 3, 2026, the Court dismissed Petitioner's *Zadvydas* claim as duplicative but ordered Respondents to file a response regarding Petitioner's other claims. (Doc. 15 at 2–3.) Respondents filed their Return on November 12, 2026. (Doc. 19.) Petitioner filed his Traverse on November 18, 2026. (Doc. 21.)

### B. Factual Background[1]

Petitioner is a citizen of Mexico. It is unclear when Petitioner entered the United States, but he has lived in the United States since early childhood. On October 27, 2004, Petitioner was convicted of kidnapping. On January 19, 2005, an immigration judge

---

[1] The background is taken from the Court's previous Order denying Petitioner's original petition. (*See* Doc. 8 at 1–2.) Accordingly, the Court omits all citations to the record.

ordered Petitioner removed from the United States to Mexico. The next day, Petitioner was physically removed to Mexico.

Subsequently, Petitioner re-entered the United States without being admitted or paroled. On March 31, 2025, Petitioner was arrested on a criminal arrest warrant for a violation of 8 U.S.C. § 1326. On April 3, 2025, the United States District Court for the Central District of California granted Petitioner a bond. As a result, an I-247 detainer was lodged. On April 4, 2025, Petitioner was taken into the custody of the Department of Homeland Security ("DHS") and served with a Notice of Intent/Decision to Reinstate Prior Order. DHS reinstated Petitioner's prior removal order under 8 U.S.C. § 1231(a)(5).

Petitioner then expressed a fear of returning to Mexico. DHS found that Petitioner did not have a reasonable fear, and the immigration judge affirmed this finding. On April 29, 2025, Petitioner filed a petition for review to the Ninth Circuit, challenging DHS's reinstatement of his final removal order. The Ninth Circuit issued a stay of removal on April 30, 2025. Despite that stay, DHS mistakenly removed Petitioner to Mexico later that same day. Following further litigation, Petitioner was paroled back into the United States in August 2025 and returned to immigration custody. The petition for review is still pending before the Ninth Circuit. Petitioner has not received a bond hearing since he last entered immigration custody.

Petitioner represents that in May 2026, a Superior Court Judge granted Petitioner's motion to vacate his prior criminal conviction, and the prosecution dismissed the charges in their entirety. That conviction formed the basis of the underlying removal order upon which the current reinstatement order rests. According to Petitioner, this vacatur materially alters his removability and opens viable avenues to challenge the underlying removal order and pursue lawful status, including adjustment of status.

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that

custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner's remaining claims are that his detention has become unreasonably prolonged as applied to him and that Respondents failed to comply with the procedural requirements of 8 C.F.R. § 241.4. (Doc. 14 ¶¶ 41–60.) Respondents argue that these claims are barred by the abuse of the writ doctrine because Petitioner could have raised them in his previous petitions. (Doc. 19 at 2–4.)

### A. Abuse of the Writ

The "abuse of the writ doctrine forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023); *see Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (recognizing that this doctrine may also apply to successive § 2241 habeas petitions). If the claims in the Second Amended Petition fall under this standard, those claims are subject to dismissal unless Petitioner "can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Alaimalo*, 645 F.3d at 1049. Respondents bear the burden of pleading abuse of the writ and must do so with "clarity and particularity." *McCleskey v. Zant*, 499 U.S. 467, 468 (1991). "The burden to disprove abuse then shifts to [P]etitioner." *Id.*

#### 1. Procedural Compliance Claim

The Court finds that Petitioner's claim regarding Respondents' compliance with the procedural requirements of § 241.4 must be dismissed under the abuse of the writ doctrine. Petitioner argues that he "expressly cited 8 C.F.R. § 241.4 and 241.13 as governing

procedural safeguards during post-order detention." (Doc. 21 at 5 (citing Doc. 1 ¶ 56).) It is true that these regulations are mentioned in the previous petitions. But just as a mere reference to a statute in a complaint does not create a cause of action under that statute, *see ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000), a mere reference to these implementing regulations in the previous petitions does not mean Petitioner brought his claims under them. This is particularly true considering the context in which the regulations are discussed. For example, Petitioner alleged that "[f]ederal regulations governing post-order detention reflect these constitutional limitations and require procedural safeguards when liberty is curtailed. *See 8 C.F.R. §§ 241.4 and 241.13*." (Doc. 1 ¶ 56 (emphasis added).) Petitioner also alleged that "the Supreme Court held that INA § 241(a)(6) must be construed to avoid serious constitutional concerns arising from prolonged or potentially indefinite civil detention." (*Id.* ¶ 51.) The Court finds that Petitioner cited these regulations not because he sought to raise claims regarding Respondents' alleged non-compliance with them, but to provide context for Petitioner's argument that his detention was illegal under *Zadvydas*. This conclusion is bolstered by the fact that Petitioner's original traverse (Doc. 7) does not mention the implementing regulations at all, and focuses its argument on the *Zadvydas* foreseeability analysis. Had the original petition truly raised a non-compliance with § 241.4 claim, Petitioner surely would have emphasized Respondents' complete lack of argument regarding that claim. Therefore, the Court finds that the § 241.4 claim "could have been raised" in the previous petitions but was not, which brings that claim within the abuse of the writ doctrine. *See Alaimalo*, 645 F.3d at 1049.

Accordingly, if his claim is to survive dismissal, Petitioner must either "show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* Cause exists if there was an external obstacle to raising this claim previously, such as where "the factual or legal basis for [the] claim was not reasonably available to counsel" or where there existed "constitutionally ineffective assistance of counsel." *McCleskey*, 499 U.S. at

494 (citation modified). Those circumstances are not present here, as the factual basis for Petitioner's § 241.4 claim has been known since the outset of Petitioner's detention. Nor does Petitioner argue that a failure to consider this claim would result in "a fundamental miscarriage of justice." *Alaimalo*, 645 F.3d at 1049; *see McCleskey*, 499 U.S. at 494 (noting that this "narrow class of cases" involves "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime"). Petitioner's § 241.4 claim is thus **DISMISSED** under the abuse of the writ doctrine.

**2. Unreasonably Prolonged Detention Claim**

The same cannot be said of Petitioner's unreasonably prolonged detention claim. Because the length of a petitioner's detention is relevant to its constitutional adherence, the abuse of the writ doctrine should not bar Petitioner's unreasonably prolonged detention claim here. *Accord Varela-Rodriguez v. Warden*, Case No. 1:26-cv-04804-KES-SAB-HC, 2026 WL 3320583, at *2 (E.D. Cal. Nov. 3, 2026) ("[P]rolonged detention due process claims are inherently dynamic and evolve as the time in detention lengthens."); *Sanchez v. Scott*, CASE NO. 2:26-cv-02667-JHC, 2026 WL 2620522, at *2 n.1 (W.D. Wash. Sept. 4, 2026) ("Petitioner's prolonged detention claim does not raise the same concerns under the abuse of writ doctrine because Petitioner was not detained for a length of time that might invoke constitutional violations when he filed [his first petition]."). The Court thus proceeds to Petitioner's unreasonably prolonged detention claim.

**B. Merits**

Respondents are correct that the Court previously concluded that Petitioner's detention did not violate *Zadvydas*, and granted Petitioner leave to amend only if "circumstances change after the Ninth Circuit's ruling on his pending Petition for Review or the processing of Petitioner's Forms I-485, I-601, and I-212." (*See* Doc. 19 at 4; Doc. 13 at 3.) However, "the Supreme Court explained that *Zadvydas* involved a *statutory* interpretation of § 1231(a)(6)." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938 (D. Colo. 2025) (citing *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) ("The [*Zadvydas*] Court applied the canon of constitutional avoidance and determined that read

in light of the Constitution's demands, § 1231(a)(6) does not permit indefinite detention.") (citation modified)). "[I]ndeed, the Supreme Court further concluded . . . that the plain language of § 1231(a)(6) does not support a claim that the *statute* 'requires bond hearings before immigration judges after six months of detention.'" *Id.* (emphasis in original) (quoting *Arteaga-Martinez*, 596 U.S. at 580–81).

But the Supreme Court explicitly did not reach "[c]onstitutional challenges to prolonged detention under § 1231(a)(6)," instead "leav[ing] these arguments for the lower courts to consider in the first instance." *Arteaga-Martinez*, 596 U.S. at 583. In line with this analysis, "many courts have allowed petitioners detained under § 1231(a)(6) to mount as-applied challenges to their assertedly prolonged detentions under the Due Process Clause." *See Beneche v. FCI Berlin Warden*, 831 F. Supp. 3d 119 (D.N.H. 2026) (collecting cases). "Thus, *Arteaga-Martinez* implicitly recognized that as-applied constitutional challenges to prolonged detention are separate and distinct from the statutory prohibition against indefinite detention embodied in *Zadvydas*." *Arostegui-Maldonado*, 794 F. Supp. 3d at 938. Although courts have applied different tests to evaluate due process challenges to allegedly prolonged detention under § 1231(a),[2] the Court finds it appropriate to apply the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Under that test, the Court considers: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Although this is a close call, the Court finds that these factors weigh in favor of Petitioner receiving a bond hearing.

---

[2] *See Arostegui-Maldonado*, 794 F. Supp. 3d at 938–39 (applying the six-factor test that this District typically applies to prolonged detention claims under § 1225(b) and § 1226(c)); *Beneche*, 831 F. Supp. 3d at 126–27 (applying a similar four-factor reasonableness test).

First, "the private interest at issue here is fundamental: freedom from imprisonment is at the core of the liberty protected by the Due Process Clause." *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (citation modified). Petitioner has spent about 15 months in immigration custody (*see supra* Section I.B.), which is comparable to the 14 months considered prolonged by the Ninth Circuit in the § 1226(a) context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) ("Because, by the time of the district court decision, [the petitioner] was detained for fourteen months following his first bond hearing, we will assume that his detention qualifies as 'prolonged' in a general sense."); *see also Elias v. LaRose*, Case No. 26-cv-04874-BAS-MMP, 2026 WL 3027648, at *1–2 (S.D. Cal. Oct. 8, 2026) (ordering a bond hearing to a petitioner who was detained under § 1231(a) for 19 months, even where "the delay largely appears to have been caused by the twelve months [the petitioner's] appeal ha[d] been pending before the Ninth Circuit"); *Cabrera v. Mullin*, Case No.: 3:26-cv-02330-BTM-DEB, 2026 WL 2276880, at *1 (S.D. Cal. Aug. 5, 2026) (granting as unopposed a request for bond hearing for a petitioner who was detained under § 1231(a) for 18 months). However, the Court "cannot simply count [Petitioner's] months of detention and leave it at that;" rather, it "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." *Rodriguez Diaz*, 53 F.4th at 1208. Petitioner's private interest is "further diminished by the fact that he is subject to an order of removal from the United States." *Id.* Therefore, the Court finds that this factor is neutral.

Second, although these developments cannot independently support a claim for relief (*see supra* Section III.A.1), the vacatur of Petitioner's state conviction and dismissal of his criminal proceedings are relevant to the risk of an erroneous deprivation. At the very least, the use of additional procedural safeguards—the first bond hearing Petitioner will have received in 15 months of immigration detention—as applied to Petitioner's ostensibly changed circumstances may have significant value. *See J.R.M.J. v. Wofford*, No. 1:25-cv-01567-DC-SCR, 2026 WL 1948264, at *5 (E.D. Cal. July 6, 2026) (finding that this factor

weighed in favor of a bond hearing because "there is significant value to a pre-deprivation hearing in the circumstances of this case, where [the petitioner] raised legitimate concerns about whether the administrative review process under 8 C.F.R. § 241.4 was fair and meaningful"). Therefore, the Court finds that this factor weighs in Petitioner's favor.

Third, the Government has a weighty interest in removing Petitioner and mitigating his risk of flight as his removal becomes more imminent. *See Rodriguez Diaz*, 53 F.4th at 1208 ("These are interests of the highest order that only increase with the passage of time. The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing [a noncitizen's] ultimate removal.") (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021)). The fiscal and administrative burdens to provide Petitioner with a bond hearing, though, are "minimal." *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Therefore, the Court finds that this factor weighs slightly in Petitioner's favor.

One of the *Mathews* factors is neutral, and the other two weigh, albeit slightly, in Petitioner's favor. Particularly because Petitioner has been detained for 15 months without a bond hearing (and allegedly without any form of individualized custody review) and because the burden on the Government is minimal, the Court will order that Petitioner receive a bond hearing to determine whether his continued civil detention is justified.

## IV. CONCLUSION

For the reasons above, the Second Amended Petition (Doc. 14) is **GRANTED in part** and **DENIED in part**. Petitioner's procedural compliance claim is **DISMISSED** under the abuse of the writ doctrine, and his accompanying request for immediate release is **DENIED**. Petitioner's as-applied due process claim, and his accompanying request for a bond hearing, are **GRANTED**.

Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioner before an immigration judge within **fourteen (14) days** of entry of this Order, unless Petitioner requests a continuance, to determine whether his continued detention is warranted. The Government shall bear the burden of establishing, by clear and convincing

evidence, that the noncitizen poses a danger to the community or a risk of flight. *See Elias*, 2026 WL 3027648, at *2 (ordering a bond hearing for a similarly situated petition conducted pursuant to this evidentiary standard); *Hilario M.R. v. Warden*, Case No. 1:24-cv-00998-EPG-HC, 2025 WL 1158841, at *11–12 (E.D. Cal. Apr. 21, 2025) (same) (collecting cases).

If no hearing occurs **within fourteen (14) days** of entry of this Order, Petitioner shall be released from Respondents' custody subject to reasonable conditions of supervision. On or before **December 28, 2026**, Respondents **SHALL FILE** a status report indicating whether and when Petitioner received a bond hearing, and the outcome of that bond hearing.

**IT IS SO ORDERED.**

DATE: November 25, 2026

Ruth Bermudez Montenegro

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE